NERESHEIMER & CO. v. UNITED STATES.　　•

(Circuit Court of Appeals, Second Circuit.　December 12, 1904.)

No. 51.

1. CUSTOMS DUTIES—FINDING OF BOARD OF GENERAL APPRAISERS—REVIEW.

Findings of fact by a Board of General Appraisers were reviewed by the court on appeal, where it appeared that the decision was made by general appraisers who did not hear the testimony, which was all taken before another general appraiser, who did not himself sign the decision.

2. SAME—CLASSIFICATION—DRILLED PEARLS—PEARLS IN THEIR NATURAL STATE—SIMILITUDE.

Certain drilled pearls of exceptionally large size and fine quality were imported together, arranged in collections according to size, the largest in the center. It appeared that these collections had not been selected for a special piece of jewelry, but that the pearls were to be ·

sold separately on their individual merits, and that they had not been advanced to a special value beyond the aggregate amount of their individual values by an assortment and selection that fitted them for immediate transformation into a necklace or string of pearls. *Held* that, under the similitude clause in section 7, Tariff Act July 24, 1897, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693], they bear a closer resemblance to "pearls in their natural state not strung or set" than to "pearls set or strung," which are enumerated in paragraphs 436 and 434, respectively, of said act, chapter 11, § 1, Schedule N, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676].

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York (131 Fed. 977), affirming a decision of the Board of General Appraisers, G. A. 5,146, T. D. 23,748, which sustained the collector of the port of New York in the assessment for customs duties of certain drilled pearls.

W. Wickham Smith, for appellant.
Henry A. Wise, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The pearls were imported under Tariff Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676]. The relevant paragraphs are:

"Par. 434. Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem."

"Par. 436. Pearls in their natural state not strung or set, ten per centum ad valorem."

There were two importations by appellants, in March and November respectively, 1901. One of these consisted of 45 drilled pearls, the other of 39 drilled pearls, the total value exceeding $123,000. The importations were experiments. The foreign representative of the house secured the pearls for resale here, and they were entered in bond until a purchaser could be secured; had a satisfactory offer not been received, they were to be sent back. At that time the customs authorities were assessing such articles for duty at 20 per cent., as "manufactured articles not otherwise provided for." It is not disputed that they are not within the enumeration of either paragraph above quoted. A resale was effected to Black, Starr & Frost, large dealers in jewelry in this city, at a price including the cost and duty at that rate—20 per cent.—besides (presumably) the importers' profit. Entries were duly made, and duty assessed at 20 per cent., amounting to $24,761. This sum was paid, and the articles withdrawn shortly after importation.

At the date of these transactions the Board of General Appraisers and the Circuit Court, Southern District of New York, had affirmed the collector's imposition of duty at 20 per cent. on drilled pearls, but an appeal in a test case was pending in this court. Decision on such appeal was handed down December 6, 1901—Tiffany v. U. S., 112 Fed. 672, 50 C. C. A. 419 In that decision we held that the goods

then before us were not jewelry, but were "loose pearls of various sizes, qualities, colors and shapes, not set or strung, and not adapted for such purpose in their then condition, but to be put into the general stock of pearls of the importer for such general use of pearls as the demands of the importer's trade should thereafter require"; and that, being perforated, they were not pearls in their natural state. Therefore they were not within the provisions of either paragraph. We further held, however, that, before they could be included in the general clause of manufactured articles not otherwise provided for, it must first be found that they do not fall within the similitude section (chapter 11, § 7, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693]), which imposes the same duty as is laid on an enumerated article upon an article similar to it in material, quality, texture, or the uses to which it may be applied.

Of the Tiffany importation we held that it would be error to take "as the standard of comparison for those pearls which are not matched or selected, and are therefore to be considered individually, those aggregations of individual pearls which have been strung into an article of jewelry. The evidence shows that there has to be a careful process of assortment and selection as to size, quality, luster, shape, etc., which takes time and skilled labor, so that the string of pearls thus produced is worth more than the aggregate values of the individual pearls composing it. * * * The cost of perforation is a mere trifle compared with the value of the pearl. * * * There is no difference between a single drilled pearl and a single strung pearl, but between a drilled pearl, or any number of unmatched drilled pearls, and the strung pearls of paragraph 434, which are commonly known as 'jewelry,' we think there is a greater difference than between the drilled pearl and the pearl in its natural state."

Subsequent to the decision in the Tiffany Case, and in March, 1902, more than three months after liquidation of the duties on the later importation, and nearly a year after the earlier importation, the collector reliquidated both entries, assessing the articles as pearls strung, 60 per cent., and imposing an additional duty of $49,522. Timely and sufficient protests and appeals have preserved the importers' right to a review of this decision, and it is not disputed that the collector had authority to reliquidate each entry within a year from the time of entry.

Each lot of pearls was imported in a morocco case, with silk lining, forming a groove running lengthwise, in which the pearls were placed and by which they were held, instead of being folded loosely in squares of paper, being arranged in a graduated order, the center being the largest, and gradually decreasing in size to the last pearl at each end. The pearls were all drilled. The Board of General Appraisers held that they were so matched and assorted as to quality, size, color, and shape that each lot possessed a value greatly in excess of the aggregate value of the individual pearls composing such collection.

Findings of fact made by the board upon conflicting testimony are, as a rule, not reviewed in this court. The case at bar, however, is peculiar. The opinion of the board is signed by three members, no

one of whom, as the record shows, either saw or heard a single one of the witnesses. Testimony was all taken before another general appraiser, who did not himself sign the opinion. The circumstance that the pearls were exceptionally large and fine apparently had great weight with the board. Undoubtedly it must have been by a process of selection and assortment that large fine pearls were sent instead of smaller and cheaper ones. They were of different sizes, and not all of the same color. They were so numerous that in each lot there were pearls which closely matched each other in size. But the test suggested in the Tiffany Case is not such an assortment and selection as brings together a lot of pearls, each of which is so well chosen for luster, size, and color that it will command a high price. The assortment and selection must be such as to produce a collocation of pearls similar to the collocation found in the articles of jewelry known as necklaces or strung pearls, where time and skilled labor have been applied to produce not merely a collection, but an aggregation such that "the string of pearls thus produced is worth more than the aggregate values of the individual pearls composing it." The evidence does not, in our opinion, warrant a finding that the pearls of these importations had been assorted so as to acquire that increased value. The government appraiser, who examined them upon arrival to see if they were "jewelry or parts thereof finished or unfinished," and reported that they were not, testified, in support of the later reliquidation, that "it seemed to [him]—it is a matter of opinion merely—that in the condition in which they were imported they were intended to be strung to constitute an article of jewelry; they simply needed the stringing." On cross-examination he admitted that, inasmuch as his examination was directed solely to determining whether they were articles of jewelry, it was not sufficient to enable him to deny the testimony of others that they were not drilled perfectly and were not in a condition for immediate stringing. The weight of testimony is clearly to the effect that they had to be rebored, and that some, at least, of them had to be repolished. The importers, interested witnesses of course, testified that they were imported merely as series of pearls, not selected for a special piece of jewelry, but offered for sale and sold on their individual merits. These witnesses are corroborated by the jewelers who bought the pearls; they were not bought as collections which could be strung, each into one article of jewelry; after being rebored and polished, they went into the general stock of pearls used for making up different articles of jewelry. If they had been advanced to a special value beyond the aggregate of their individual values by an assortment and selection which fitted them for immediate transformation, each lot into a necklace or string of pearls, it is difficult to believe that this added value would have been thrown away. We are not satisfied from the proof that these importations come within the exception indicated in the Tiffany Case.

The decision appealed from is reversed, and the cause remitted with instructions to classify them at 10 per cent. by similitude to paragraph 436.