## CITROEN v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. January 12, 1909.)

### No. 153 (4,974.)

1. CUSTOMS DUTIES (§ 44*)—CLASSIFICATION—PEARLS FOR NECKLACE—SIMILI-
TUDE—"JEWELRY"—"PEARLS IN THEIR NATURAL STATE."

Loose drilled pearls, imported in separate packages, had been assembled into a necklace abroad and tentatively worn by a person who contracted to purchase them, delivery to be made in the United States, and who, after receiving them here, added six more pearls and had them made into a necklace. *Held*, that as imported they were not "jewelry," within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 434, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676), but that they were dutiable as "pearls in their natural state," by similitude, under par. 436, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 44.*

For other definitions, see Words and Phrases, vol. 4, pp. 3811, 3812; vol. 8, p. 7694.]

2. CUSTOMS DUTIES (§ 37*)—CLASSIFICATION—PEARLS—"NATURAL STATE."

The meaning discussed of "natural state," in the provision for "pearls in their natural state" in Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 436, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

The Circuit Court reversed a decision by the Board of United States General Appraisers (G. A. 6,617, T. D. 28,246), which had reversed the assessment of duty by the collector of customs at the port of New York.

The opinion of the Circuit Court reads as follows:

LACOMBE, Circuit Judge. This case forcibly indicates the defects of the old practice, whereby the proofs were taken in part before the Board of General Appraisers and in part before the court after the board's decision was rendered. The opinion of the two General Appraisers who united in reversing the collector—the third General Appraiser dissented—indicates that they would probably have decided the other way, "had these 37 pearls been assembled into a completed necklace abroad and worn as such." The brief additional testimony introduced in the Circuit Court conclusively establishes that proposition, and upon all the proofs the 37 pearls cannot, under the rule laid down by the Circuit Court of Appeals in Tiffany v. U. S., 112 Fed. 672, 50 C. C. A. 419, and Neresheimer & Co. v. U. S., 136 Fed. 86, 68 C. C. A. 654, be classified, even by similitude, as "pearls in their natural state."

Inasmuch as this case will undoubtedly be appealed, it seems unnecessary to add anything to the discussion of the correctness or practicability of the rules for classification laid down in the earlier cases above cited, except in one particular. Counsel for the importer challenges the suggestion in the Tiffany Case that, when there has been "a careful process of assortment and selection as to size, quality, luster, shape, etc., which takes time and skilled labor," the "string of pearls thus produced is worth more than the aggregate values of the individual pearls composing it." Reference is made to testimony to the effect that a collection of pearls will often be sold to one purchaser at a less price than the aggregate would amount to were each pearl sold separately. There is nothing surprising in the circumstance that a dealer will be content with a smaller percentage of profit if he can sell

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

37 exceptionally large and expensive pearls in a single transaction than he would expect if he had to dispose of them individually, possibly having to wait many months before all were sold. It is a mere "wholesale discount," and does not indicate that the intrinsic value of the collection is reduced by sorting, selecting, and arranging. If it were, we may be very sure that dealers would not thus waste their time and skill and the interest on their money.

The decision of the board is reversed, and that of the collector affirmed.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importer.

J. Osgood Nichols, Asst. U. S. Atty.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge. The appellant imported 37 pearls valued at $220,000. The pearls were divided into 5 separate packages containing, respectively, 1 pearl, 6 pearls, 8 pearls, 10 pearls, and 12 pearls. They were all loose and all drilled. The appraiser in his report returned them as pearls, with the advisory rate of 10 per cent. ad valorem. The collector, however, rejected the appraiser's advice and classified them, by similitude, as pearls set or strung or jewelry, and levied a duty of 60 per cent. ad valorem.

The appellant protested, insisting that drilled pearls, by similitude, were liable to a duty of 10 per cent. ad valorem under paragraph 436 of the tariff act of July 24, 1897. Paragraph 434 (Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676), invoked by the collector, is as follows:

"Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem."

Paragraph 436, relied on by the importer, is as follows:

"Pearls in their natural state, not strung or set, ten per centum ad valorem."

The pearls which are the subject of this controversy had, previous to their importation, become well known in Paris and London and finally came under the control of Hugo Citroen, a brother of the importer. Negotiations for the purchase of the pearls were entered into from time to time, and bids were made, sometimes for the entire lot and sometimes for parts thereof. Finally they were seen by Mrs. Leeds, of New York, both loose and on a string, at Citroen's place of business, at a shop on the Rue de la Paix, and also at the hotel where she was staying. After considerable negotiation they were purchased by her for $340,000, delivery to be made to her at Newport, R. I. Mrs. Leeds, having turned over to Citroen a necklace, valued at $52,000 or $54,000, in part payment, was permitted to take the pearls into her possession and she wore them on several occasions in Paris. About a week after the payment of the duty of 10 per cent. the collector, on instructions from the Secretary of the Treasury, demanded an additional duty of 50 per cent., amounting to $110,335. The appellant went to Washington, protested against this additional exaction, and finally asked that the sum already paid be refunded and

he be permitted to take the pearls back to France. The request was denied. The additional duty was paid under protest, and the pearls, in the papers as imported, were delivered to Mrs. Leeds.

In this connection, we deem it proper to refer to a ruling of the Treasury Department which was in force in June, 1906, and which, it is fair to assume, actuated the appellant in importing and selling the pearls in question. In January, 1905, the board, upon facts almost identical with those at bar, decided, in the Rushmore Case, G. A. 5,899 (T. D. 25,986), that 85 pearls "carefully selected and matched and assorted, and, in fact, are said to have been strung and required only to be restrung in order to form a necklace," were dutiable at 10 per cent. ad valorem under paragraph 436. No appeal was taken from this decision, which went into effect February 21, 1905. The Treasury Department sent copies of the decision to officers of the customs for their information and guidance. The interpretation thus placed upon the law by officers of the government and under which they acted for over fifteen months is entitled to consideration. They had evidently determined that the vexed questions arising under the ambiguous language of the pearl paragraphs should be settled, and that this could be accomplished and a fair and reasonable rule established by acquiescence in the Rushmore decision.

In the case at bar the board, after full hearing, during which they listened to the testimony of a large number of expert witnesses, decided in favor of the importer and sustained the protest. They found the following facts:

First. That a sufficient number of pearls, even of large size, required to form a necklace matched as to size and comparative color, but not otherwise, can be assembled within a short time at a price based upon the cost of each separate pearl.

Second. Such a collection would usually be sold at a less price than the aggregate amount if each pearl were sold separately.

Third. The pearls in question belong to such a collection, not being matched as to color and luster with such care as would enhance their value as a collection.

Fourth. Loose pearls bear no mark by means of which it can be determined whether they have been strung or set as jewelry, and it is not unusual for the owner of a necklace to remove a pearl and replace it for one more desirable, the discarded pearl taking its place in trade as an unstrung pearl.

Fifth. Over 75 per cent. of all large pearls are drilled by the pearl fishers.

The board reached the conclusion that the pearls in question, having been imported loose in separate papers, were presumptively dutiable as pearls in their natural state, by similitude, at 10 per cent. ad valorem. After the decision of the board Mrs. Leeds was examined in the Circuit Court and testified that during the negotiations in Paris—

"They were brought [to the hotel] both on the string and off the string; it was strung up at odd times, then it was taken apart and other pearls were put in and others taken out; so it was strung several times. * * * I wore it—I don't know any particular occasion. I wore it a great deal."

The Circuit Court reversed the board and affirmed the collector on the authority of Tiffany v. United States, 112 Fed. 672, 50 C. C. A. 419, and Neresheimer v. United States, 136 Fed. 86, 68 C. C. A. 654, holding that the pearls could not be classified even by similitude as "pearls in their natural state."

The confusion which has arisen regarding the paragraphs in question is in our judgment attributable, first, to the change made by Congress from the plain language of previous acts by the insertion of the words, "in their natural state," in paragraph 436. These words had no commercial significance at the date of the act of 1897, and the efforts of executive and judicial officers to ascertain their meaning have thus far been unsuccessful. Second, we think the confusion is in a measure due to the effort to solve the difficulty by attempting to institute a comparison between the imported articles and combinations not named in the tariff law, depending not upon an examination of the articles themselves, but often upon extrinsic evidence obtained long afterwards. A comparison which cannot be uniform, which imposes 10 per cent. upon one aggregation of pearls and 60 per cent. upon a similar aggregation, the rate depending upon the ability to obtain evidence of prior use in foreign countries. A comparison which does not admit of a fixed, definite rule, which encourages partiality, promotes injustice, and has broken down in practical application. This is illustrated by the fact that in the cases which have come to the attention of the court the most marked contrariety of opinion has developed as to whether the respective collection was matched for a necklace, and whether a larger price could be obtained for the pearls singly or in combination. Were the question presented here for the first time we should be inclined to hold that the pearls in question are excluded by the express language of paragraph 434. It was not seriously disputed at the argument that a pearl which had been "set," but which was removed from its setting and imported in that condition alone, could not be classified under that paragraph. It would seem that a similar rule should apply to pearls which have been "strung" but are "not strung" when they reach this country. The law could be as easily evaded in the one case as in the other. If Congress has seen fit to draw the line between pearls which are set and strung and those which are unset and unstrung, the responsibility rests with the lawmakers and not with the courts.

Moreover, the difficulty is not remedied by the government's contention. We are unable to perceive the justice or consistency of levying 60 per cent. upon one collection of pearls and 10 per cent. on another similar collection, the marked discrimination against the first collection being based upon the proof that they are suitable for a necklace and have had a string passed through them. The value of the pearls, no matter how produced, must be stated in the invoice, and when duty is paid on this value at 10 per cent. it would seem to answer the requirements of the law.

We should also incline to the opinion, were the question an open one, that drilled pearls are not excluded from paragraph 436. The words "not strung or set" clearly indicate that "pearls in their natural state"

may be strung and set, and it is obvious that no pearl can be strung unless it has a hole through it. The words last quoted were apparently unnecessary; but we think it is not difficult, in the light of previous legislation, to decipher the general purpose of Congress. It would appear that the intent was to provide for all pearls in the two paragraphs —434, covering pearls which had become jewelry by being set or strung in pins, rings, necklaces, etc., and 436, covering all other pearls. The words "natural state" may have been intended to distinguish the pearls from those in the quasi artificial state to which they had been translated by becoming jewelry or parts thereof. Unquestionably there are difficulties attending such a construction, but we think them less formidable than those at present existing. With the law so construed there would be a logical, reasonable, and workable system.

We feel constrained, however, to follow the former decisions of this court in the Tiffany and Neresheimer Cases, but we see no reason to disturb the conclusion of the board upon the facts. As before stated, they heard all the important witnesses except Mr. Bagg and Mrs. Leeds. We do not consider the testimony of the latter of sufficient importance to justify us in departing from the rule that the finding of the board upon the facts will not be set aside unless against the weight of evidence. It happened that Mrs. Leeds wanted the pearls as a necklace or as part of a necklace, and naturally she wore them tentatively in Paris.

Another purchaser might have wanted the pearls for a very different purpose and would probably have assembled them, or parts of them, in the desired environment. The fact remains that the pearls arrived here unstrung and presumably too few in number for a necklace: for Mrs. Leeds on receiving them added six pearls to the collection to make the necklace long enough, and had them placed on a silk cord with a suitable clasp. Then, and not till then, was the necklace complete.

The decision of the Circuit Court is reversed and that of the Board of General Appraisers is affirmed.