(C. D. 2037)

## S. H. KRESS & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 14, 1958)

*Sharretts, Paley & Carter (Howard Clare Carter* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Kiley,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest relates to strings of beads which the collector assessed with duty at the rate of 30 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898, as articles, composed wholly or in chief value of beads. Plaintiff claims that the merchandise is properly dutiable at only 17½ per centum ad valorem under the same paragraph, as beads, not specially provided for. The competing provisions appear in paragraph 1503 of the Tariff Act of 1930, as amended, *supra,* as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1503 | Beads, including bugles, not specially provided for_____ | 17½% ad val. |
| 1503 | Fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliqued, or scalloped, composed wholly or in chief value of beads or spangles (other than imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin)____ | 30% ad val. |

The strings of beads in question are variously described on the invoice, and are identified by item numbers 9566, C–9566, F–9566, J–9566, P–9566, S–9566, U–9566, 9567, and B–9568. Two strings of beads, representative of all of the items, are in evidence (plaintiff's collective exhibit 1). One string, 9 feet long, is made up of multi-colored beads; the other, 10 feet long, consists entirely of pink beads. Each string of beads is encased in a paper wrapper, having the words, "STRING OF BEADS FOR CHRISTMAS DECORATING."

Merchandise (defendant's collective illustrative exhibit A–1, A–2, A–3, and A–4), substantially the same as that here under consideration, was the subject of *United States* v. *S. H. Kress & Co.*, 44 C. C. P. A. (Customs) 141, C. A. D. 651. There, as here, the merchandise was assessed as articles, composed of beads, and claimed to be properly classifiable as beads, not specially provided for, under paragraph 1503, as amended, *supra*. The cited case was presented on an agreed set of facts showing that the strings of beads were exclusively used, in the lengths as imported, for Christmas decorations. The factual condition therein was summarized by the appellate court as follows:

> In the instant case it has been stipulated that the merchandise in its condition as imported is intended to be used as Christmas decorations, and no other possible use has been suggested. The colors of the beads and the lengths of the strings have evidently been selected with that use in mind, and each string of beads is a distinct and complete article, designed as a whole and for a particular purpose.

Based on the foregoing set of facts, the Court of Customs and Patent Appeals, in the *S. H. Kress & Co.* case, *supra*, sustained the collector's classification of the merchandise as articles, composed of beads, and, in reaching its conclusion, stated:

> We are of the opinion that when the beads here involved were strung in particular lengths to produce completed articles intended for a definite use they ceased to be beads, within the meaning of paragraph 1503, and became articles in chief value of beads within the meaning of that paragraph. The collector's classification was therefore correct and the protest should have been overruled.

In the present record, we are not bound by any stipulation. The record in the *S. H. Kress & Co.* case, *supra*, has not been incorporated herein. The case now before us has been presented by plaintiff, as stated in counsel's brief, "to remedy the deficiencies in the prior case." In other words, plaintiff contends that the strings of beads involved herein are not articles dedicated to any particular use, but that they are merely beads susceptible of, and actually used for, various purposes. To support the contention, plaintiff introduced the oral testimony of two witnesses and several illustrative exhibits, as well as samples of the merchandise in question.

Plaintiff's first witness, an importer of Christmas decorations, stated that he sold these strings of beads, in their imported lengths, as Christmas tree ornaments. He testified further that, "several years ago" (R. 13), he used strings of beads, like those under consider-

ation, in making corsages, and that when so used the imported strings of beads were cut to "the needed lengths" (R. 15). Such use, which was "experimentally for the purpose of a commercial usage" (R. 18), had to be abandoned because of prohibitive labor costs and excessive loss or waste of material. On cross-examination, the witness stated that the merchandise involved in the *S. H. Kress & Co.* case, *supra*, (defendant's collective illustrative exhibit A–1 to A–4, *supra*), admittedly the same as the items under consideration, were bought and sold by him as "bead chains."

Plaintiff's second witness stated that she is a designer and writer with 28 years' experience; that she is the author of several books and many magazine articles on the subject of designing; and that, for the past 10 years, she has delivered frequent lectures on seasonal subjects related to designing. Since 1940, she has been a teacher of decorative designing. In commercial designing, the witness works in wrought iron, copper, brass, ceramics, and alabaster. She designs for others to import and works for seven or eight firms.

Referring to the strings of beads in question (plaintiff's collective exhibit 1, *supra*), the witness testified that she has been familiar with them for "At least 9 or 10 years" (R. 29) and that she has never used them in their full length. In this connection, she stated as follows (R. 41):

> I don't believe I have ever used it in its full length, but then, when you design, you don't design for the imported product. You use the imported product in your design and it never is the right length or the right size or mounted the way you want it. Sometimes, you want it on string; sometimes you want it on wire; sometimes you want it in bunches and in groups; sometimes in a short string, so that I don't believe I've ever used it as it comes in its full length.

The witness further testified that she has personally used the present merchandise in designing and making Christmas corsages (plaintiff's illustrative exhibit 7), Christmas centerpieces (plaintiff's illustrative exhibit 5), Christmas wreaths, and small artificial Christmas trees (plaintiff's collective illustrative exhibit 3 and plaintiff's illustrative exhibit 4). The witness stated that she has sold those articles to department stores located in New York City and "across the country" (R. 38) and directly to the public through a retail store that she operates. She testified, further, that she has seen merchandise, such as that in question, used in the homes of students, friends, and neighbors, where she has observed its use as follows (R. 45–46):

> I see the beads separated and put on a fine wire and curled and used for flower centerpieces. I see it combined with other material and made into a garland. I see it used on figurines to make a halo—a shining halo. I see it used on tarlatan to make a decoration for a buffet sort of decorative flower. I have seen it used pasted on Styrofoam; it's a plastic composition used as a base for Christmas designs, and people separate the colors and stick them on and make a mosaic of beads.

Plaintiff's uncontradicted evidence—oral testimony coupled with the exhibits—as hereinabove outlined is sufficient to say that the stringing of these beads did not convert them into a distinct and separately classifiable article. They have retained their identity as beads and, as such, are used for Christmas decorating and in the manufacture of a variety of articles. In their decorative use, these beads are sometimes used separately, sometimes in short lengths of "about 15 or 20 beads" (R. 32), and, occasionally, in the lengths as imported. They are not permanently strung in a particular length and are not designed for use in their imported condition as a specific article. In their imported lengths, they are not dedicated to any definite or particular use.

The factual condition now before us, which is materially different from that upon which the decision in the *S. H. Kress & Co.* case, *supra*, was based, renders the cited case distinguishable from the present case. Hence, the decision of our appellate court therein cannot be considered as binding upon us here.

That beads may be strung or mounted and still be beads in a tariff sense, is well settled. *Theo. L. Stern & Co. (Inc.)* v. *United States*, 20 C. C. P. A. (Customs) 423, T. D. 46260. Moreover, paragraph 1503 of the Tariff Act of 1930, as originally enacted, embodies a proviso that was not included in predecessor paragraphs in earlier tariff acts and which reads as follows:

* * * *Provided*, that the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: * * *.

The case of *Paramount Import Export Co., Paramount Import Co., Inc.* v. *United States*, 45 C. C. P. A. (Customs) 82, C. A. D. 677, is pertinent herein. That case involved certain disks or blanks, ranging in diameter from 22-line size to 34-line size.

The merchandise had been classified as partly finished shell buttons and was claimed to be dutiable as manufactures of shell, or shell, manufactured. The court found that the disks were used "to a considerable extent" for making "shank buttons" and that they were also used "in substantial quantities as ornamental inlays and for other purposes in the jewelry industry, as well as for elevator pushbuttons and buttons on the keys of musical instruments." In rejecting the collector's classification of the merchandise as partly finished buttons, the appellate court, through Judge Worley, stated as follows:

There is no definite evidence as to the exact proportions of disks or blanks such as those here which are used for each of the various purposes mentioned in the testimony. It is quite clear, however, that very substantial quantities are used commercially for purposes other than the making of buttons, and that such uses are by no means accidental or fugitive. Accordingly, in view of the authorities cited, we are of the opinion the merchandise, at the time of importation, was not

dedicated to use in the making of buttons and, therefore, cannot properly be classified as partly finished buttons.

Applying the reasoning employed in the foregoing quotation to the present issue, it can be said, based on plaintiff's uncontradicted evidence, that the strings of beads in question are commercially suitable and commercially used for making a variety of articles. While the record does not show the exact proportions in which these strings of beads are used for the different purposes mentioned herein, plaintiff has established, *prima facie* at least, that there is substantial commercial use of these items as mere material in decorating different kinds of articles that are sold to the general public through retail stores located throughout the United States.

The samples (plaintiff's collective exhibit 1, *supra*) lend support to our finding that the merchandise under consideration is nothing more than strings of beads. The strings are merely knotted. They have no clasp, hook, catch, or other fastening device indicative of a completed article adapted for a specific use. As stated by Judge Worley in his dissenting opinion in the *S. H. Kress & Co.* case, *supra*:

* * * *Only if the mere stringing of beads can advance them beyond the condition of strung beads can these exhibits be considered as more or other than strung beads.* [Italics quoted.]

The case of *United States* v. *May Department Stores Co.*, 15 Ct. Cust. Appls. 46, T. D. 42151, cited in defendant's brief, has no application. There, the merchandise consisted of certain rose-colored glass beads, permanently strung into necklaces. The question presented was whether the articles were more specifically provided for as jewelry, as classified, or as beads in imitation of precious or semi-precious stones, as claimed. No comparable issue is involved herein.

For all of the reasons hereinabove set forth and based upon the record before us, we hold the merchandise in question to be properly classifiable under the provision for beads, not specially provided for, in paragraph 1503, as modified, *supra*, carrying a dutiable rate of 17½ per centum ad valorem, as claimed by plaintiff.

In a volume titled, "TARIFF ACT OF 1930—Committee Reports—Conference Reports—71st Congress, 1st & 2d Sessions," there is included a "MEMORANDUM OF COURT DECISIONS AFFECTING TARIFF ACT OF 1922" that was prepared for the use of the Committee on Ways and Means. On page 45 thereof, where paragraph 1403 of the Tariff Act of 1922 is discussed, there is the following comment:

We have had considerable litigation under this paragraph on the subject of beads graduated and imported in necklace lengths, which were assessed by the collector of customs as articles composed of beads at 60 per centum ad valorem, and claimed by the importers to be dutiable as beads at 35 per centum ad valorem. Cases all involved proof as to whether or not the beads were permanently or only temporarily strung.

* * * * * * *

It is difficult for the customs officers to determine when a string of beads is permanently or temporarily strung, except decorative beads which are imported in bunches or so-called mass, and in order to prevent further litigation of this character, it is suggested that Congress signify its intention more clearly, either by making the provision for articles cover beads strung or the provision for beads cover those which are "strung or loose," as it did in the case of imitation pearl beads and beads in imitation of precious or semiprecious stones.

The foregoing quotation is clear in its suggestion to eliminate any distinction and to supply uniformity in the tariff treatment of beads that are permanently or only temporarily strung. That Congress adopted the suggestion is reflected in the enactment of the proviso included in paragraph 1503, requiring that the rate applicable to beads shall apply whether the beads are "strung or loose." Our conclusion gives expression to such congressional intent.

Careful consideration has been given to all of the cases referred to in the briefs of counsel for the respective parties, but it is deemed unnecessary to give further discussion to them, in the light of the reasoning followed and the conclusion reached herein.

The protest is sustained and judgment will be rendered accordingly.