## Lorsch & Co. v. United States (No. 1819).[1]

BEADS—ARTICLES OF BEADS—PARAGRAPH 333, TARIFF ACT OF 1913.

Imitation pearl beads, strung temporarily upon flimsy cotton strings, selected and graded as to size so that the beads graduate from the largest in the center to the smallest at either end, are classifiable as "imitation pearl beads * * * strung loosely on thread for facility in transportation only," and not as articles of beads under paragraph 333, tariff act of 1913. However useful for trade purposes may be the selecting and grading, the fact remains that the *stringing* was done for facility in transportation only, as the beads have to be restrung more durably and fitted with clasps before being practical for use as chains or necklaces.

### United States Court of Customs Appeals, January 29, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8024 (T. D. 36999).

[Reversed.]

*Comstock & Washburn (Albert H. Washburn* and *Henry J. Rode* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General *(Thomas J. Doherty,* special attorney, of counsel), for the United States.

[Oral argument Dec. 11, 1917, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise here in suit consists of strings of imitation pearl beads selected and graded as to size so that the beads graduate from the largest in the center to the smallest at either end. The controversy involves their proper dutiable classification under respective portions of paragraph 333 of the tariff act of 1913, which reads:

333. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, 35 per centum ad valorem; curtains and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, 50 per centum ad valorem.

They were assessed for duty at 50 per cent ad valorem under the last provision thereof as "articles composed wholly or in chief value of beads." The importers, while making several claims, rely chiefly, if not solely, before this court upon the claim that the merchandise is properly dutiable as "imitation pearl beads strung loosely on thread for facility in transportation only" within the terms of the first part of the paragraph. The Board of General Appraisers overruled the protest and the importers appeal.

Precise description of the merchandise in its condition as imported will perhaps be better had and more correctly stated by a recital of the testimony before the Board of General Appraisers.

---

Mr. Egbert B. Shepard, on behalf of the importers, testified as follows:

Q. Now, what kind of goods are they?—A. Strung pearls, graduated.

Q. Graduated strung pearls?—A. Yes, sir.

Q. They had a clasp on them, or were they just simply on strings?—A. Just temporarily strung.

Q. You, as a matter of fact, restrung those pearls before they were marketed?—A. Yes, sir.

Q. Is that something that you do in every case with the imitation pearls that you import?—A. Except when we supply them to others who must restring them in order to sell them.

Q. What is the object in stringing them at all in the first instance?—A. Two or three reasons. They can not be used by the wearer unless they are restrung. The string they come on is too short; it is usually too weak, too flimsy character, to sell them on for permanent use.

Q. Any other reasons that you have.—A. They are too short.

    *        *        *        *        *        *        *

Q. Referring to those assessed at 50 per cent under paragraph 333, are they permanently or temporarily strung?—A. Those are temporarily strung.

    *        *        *        *        *        *        *

Q. Will you please explain, Mr. Shepard, why this graduation is done?—A. It is because the strings are all graduated and it is a convenience.

Q. Doesn't it naturally entail more time and labor to string graduated necklaces or strings than it would to string one all irregular?—A. I hardly think so, if you knew how that was done in Europe.

Q. Can you explain how you can as quickly or as easily string a graduated necklace as you could string one indiscriminately?—A. I think so. These little balls are blown in tremendous quantities in assorted sizes, all sizes, and the sizes are separated by a process of sifting, and when the process is done they have a lot of boxes full of these various size pearls and, therefore, when it comes time for the girls to string them it is simply a matter of their reaching out to this box for the first one or two and the box immediately next to it for the next one or two. It does not make much difference whether they reach there or over here for pearls all of one size. And the uniform strings have to be sized the same way.

Q. How many sizes are there, do you know, in a necklace of this character?—A. It depends on the manufacturers sometimes. In that one there there might be more or less than some other graduated string.

    *        *        *        *        *        *        *

Q You think that you could string a graduated pearl string as rapidly and easily as if it were indiscriminately strung with any sizes?—A. The way they do it, I think so; yes.

The board duly incorporated within this record the testimony in a previous case involving concededly precise merchandise. At the hearing therein Mr. Emil Lewy, a competent witness, testifying as to such articles as these importations, stated as follows:

Q. Now, please tell us what you do to the imitation pearl beads on strings such as these which are before us, before selling them, if anything?

Mr. LAWRENCE. Objected to on the ground that it is immaterial—the condition after they are imported.

Objection overruled. Exception.

Q. What do you do with them?—A. Well, these beads we have to restring; mount with clasps or spring rings, in order to sell them to the trade.

Q. Do you sell them as they appear here without clasps?—A. No, sir.

Q. Do you attach, as a general rule, clasps to bead necklaces before you sell them?—A. Always.

Q. Is it your usual practice to cut apart and restring the imitation pearl beads which you import in this condition?—A. Yes, sir.

Q. That is always the fact, is it?—A. Always. In this case it is physically impossible to sell it without—with a clasp unless you do restring it.

Q. Why do you have to restring them?—A. Because there is not sufficient strength there to allow putting on a clasp.

Q. With reference to the string, is that the kind of string usually used in stringing pearl beads?—A. Not such as that used here, no, sir; it is too flimsy.

Q. Will you tell us in a general way as to how pearl beads are usually strung?—A. Well, they are either strung with very strong silk or dental floss or foxtail, which is a metal chain.

Q. Does the string after it is cut for the purpose of restringing extend beyond the last pearl bead on either end, or how is it manipulated?—A. Well, you must have an additional length on each end to attach a clasp, for the simple reason that after you put a clasp on you must run the string back a certain length to tie it. You can not tie it on the end because it would look very poor.

Q. About how far back in the string of pearl beads does the string extend before it is finally tied?—A. We usually run it out an inch before we tie it; we run it back an inch and a half and tie it again to make it strong.

Q. (By General Appraiser McCLELLAND.) What kind of strings are these strung on when they are imported?—A. Only cheap cotton thread. A ribbon is put on the end to keep the bead from dropping off.

Q. (By Mr. RODE.) What is the purpose of stringing them at all on the other side?—A. Simply to hold them together for the convenience of transportation.

 &ast; .  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. How long have you handled beads strung in this graduated form?—A. Oh, for about 20 years.

Q. You mean to say that you never sell them on the string upon which they are imported?—A. No, sir.

Q. When they are restrung, are they restrung in the same order in which they appear on this string?—A. Sometimes, but mostly not.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. (By General Appraiser SULLIVAN.) Suppose somebody wished to buy a string of beads of the character of those in Exhibit 1, just as they are without any further graduation, what would you do in that case?—A. Well, we would have to put on a snap; we would have to restring the entire string to put on the snap, because it is a physical impossibility to put on the snap as the string is.

The Government then called the examiner of such merchandise as a witness. His testimony tended more to corroborate than dispute that of the importers' witnesses.

The contention of the Government is well developed and clearly expressed in their brief filed in this court at pages 10 and 11 thereof as follows: [Italics ours.]

It seems reasonably plain that the strings of graduated beads in suit are the *result of a process* that has for its object *not the mere stringing* of beads for facility in transportation only, *but the transformation of beads of miscellaneous sizes into carefully*

*graded and selected groups that possess an appropriate assortment and a proper length for necklaces.*

Various considerations deduced from the testimony compel this conclusion. Beads that are *merely strung* have many other uses than for conversion into necklaces, but it does not appear that graduated beads such as these are susceptible of any other use. There is no conceivable reason for graduating them except that thereby their completion into necklaces is facilitated. Consequently, *beads that are graduated* as these are have been advanced toward manufacture by a very important and significant step. It might even be said that they have by this process been dedicated to use as necklaces. If, as the importers would have us believe, the arrangement on strings in a graduated order, with the largest bead in the center, and gradually decreasing in size to the last bead at each end, is of no significance, and the strings are merely masses of beads, then all the *labor of selection and grading* would go for naught. The witness Lewy (R. 15) said he imports them "to a large extent this way for the simple reason that in this string we get all sizes," but it would seem that if all he wanted was an assortment on a string that purpose would be better served by having the beads graduated in size from one end to the other; that is to say, have the beads smallest on one end and largest at the other. They could be picked up much more easily if so arranged. It seems so entirely improbable as to be unbelievable that *these processes of selection and graduation* are done without any motive at all. It does not seem to be in accordance with good business principle or with the ordinary dictates of common sense that this work should be done only to be undone upon importation.

The proper application of this differentiation, so aptly made by counsel for the Government, between the here applied processes of assorting and matching as distinguished and separate from the stringing of these beads is decisive of the case. Whether done at the same time as or at different times from the stringing of the beads these are different processes from that of stringing and applied for different purposes. The assorting and matching may be applied for trade purposes. They have nothing to do with the shipping purposes, while the particular stringing here applied the evidence shows is for shipping purposes only and not for any trade purpose.

The distinction was clearly emphasized by the United States Supreme Court in United States *v.* Citroen (223 U. S., 407, 415), in declaring what constituted "pearls" "strung" under paragraph 434 of the tariff act of 1897 as follows:

In the paragraph as to jewelry (434) Congress expressly defined what pearls were to be included. The paragraph reads, "including * * * pearls set or strung." It does not say pearls that can be strung, or *that are assorted or matched so as to be suitable for a necklace,* but pearls "set or strung." We are not concerned with the reason for the distinction; it is enough that Congress made it. Had these pearls never been strung before importation, no one would be heard to argue that they fell directly within the description of paragraph 434 because they could be strung, *or had been collected for the purpose of stringing or of being worn as a necklace.* Loose pearls—however valuable the collection—*however carefully matched* or desirable for a necklace—are not "pearls set or strung." (Italics ours.)

The trend of decision and weight of authority confirms this view. Heresheimer & Co. *v.* United States (136 Fed., 86) and cases therein cited.

So here no amount of sorting or matching could constitute these imitation pearls as "strung" or take them out of that part of paragraph 333 providing for imitation pearl beads "not strung." They are not processes devoted to or in the least effective of that end. The true distinction lies in the fact that the words "imitation pearl beads" as herein used refers to and includes *all* such beads regardless of whether or not they are assorted . or matched or intermingled irrespective of size or whatever their relative position. To hold otherwise reads into the statute words of limitation as to its subject not written therein by Congress, limiting it in effect to read "imitation pearl beads" *not assorted or matched* "strung loosely on thread for facility in transportation only." The court is not permitted to so limit the statute. The issue presented, therefore, is resolved solely by the inquiry as to whether or not these threads upon which these beads were strung were temporary, for the purpose of transportation only, or permanent and intended to accompany and constitute a part of the articles in their ultimate use, such as for necklaces. The uncontradicted testimony is to the effect that these beads were only temporarily strung upon flimsy cotton strings and in every case designed and required to be restrung upon more durable strings of silk, dental floss, or foxtail metal chain, to which metal snaps are added before practically useful or used as chains or necklaces. The court is, therefore, of the opinion that the articles are properly dutiable under the first part of said paragraph 333 at 35 per cent ad valorem, as claimed.

[*Reversed.*]