(C. D. 1967)

D. LISNER & Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 13, 1958)

*John D. Rode* for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: These protests relate to strands of solid imitation pearl beads from Spain, which were assessed with duty at the rate of one-half of 1 cent per inch under the provision in paragraph 1503 of the Tariff Act of 1930 for imitation solid pearl beads,

valued at more than one-fourth of 1 cent and not more than 1 cent per inch. Plaintiff claims that the articles in question are properly classifiable under the provision in paragraph 1527 (a) (2) of the Tariff Act of 1930 for "Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof): * * *," carrying dutiable rates equivalent to 110 per centum ad valorem. Specifically, plaintiff contends, as stated by counsel in his opening statement at the time of trial, that—

* * * in their condition as imported the merchandise was no longer beads, but were unfinished necklaces dedicated to that use, and actually, practically and commercially fit for no other use.

To support its contention, plaintiff, a dealer in all types of jewelry, such as necklaces, earrings, bracelets, and pins, introduced the testimony of its vice president in charge of sales. The witness stated that he has been associated with his employer for approximately 33 years, that during the period of his employment he was in charge of the pearl department of his employer's organization, and that he also bought jewelry in the foreign market and in the domestic market. He testified that he purchased the merchandise in question which "consisted of graduated imitation pearl necklaces in various lengths and different sizes, as to centimeter for length and millimeter for graduation." At the time of importation, there were from 12 to 36 strands loosely wrapped or tied with a piece of string. The merchandise was ordered and received in specific lengths, running "from about 38 centimeter, 40, 42, 43, 45, possibly 46 to 50 centimeter," all of which are standard lengths for necklaces. The use of different lengths facilitated completion of the merchandise into necklaces of double, triple, or quadruple strands. These pearl beads from Spain, as imported, were strung on substantial strings (plaintiff's illustrative exhibit 1), which were much longer in length than the beads that were strung thereon. Extra long thread or string was used to permit the addition of a clasp, without restringing the beads. These pearl beads, as strung, were graduated from the smallest on top to the largest size in the center (plaintiff's illustrative exhibit 2). The imported condition of the strands of these Spanish pearl beads, strung on substantial strings and graduated with proper matching, brought the merchandise to a condition where the only manipulation necessary to complete the necklaces was the addition of a clasp (plaintiff's illustrative exhibit 3), which work was done after importation in the following manner (R. 19):

* * * A needle was put on one end of it, and that is drawn through a jump ring, knotted back either one or two beads, and then pulled through another three beads, another knot put on, and clipped off. That was done whether there is one or two strands, or any strand which made the necklace.

Ordering the merchandise in the specific lengths that were received and having the beads strung in graduating sizes with the use of strings sufficiently strong to eliminate restringing, all of which was done prior to importation, brought the imported merchandise to the condition of unfinished necklaces that required nothing to be done, except the addition of a clasp, to produce finished necklaces. On cross-examination, the witness testified that these strands of Spanish beads, of which approximately 900,000 were imported, were never restrung, unless they broke, and that the amount broken "would be too small for me to even think about it" (R. 35). Explaining his use of the term "loosely strung" in connection with the merchandise under consideration, the witness testified as follows (R. 34):

R. Q. You were questioned about the phraseology "loosely strung", and I believe you stated that as imported the beads in question were loosely strung. What did you mean by that?—A. There was no clasp attached to it, or any connection of any kind. They were merely the pearls on the strings. To me it is a loosely strung necklace unless the clasp is attached.

R. Q. Did you mean to infer that the strings on which they were strung was a mere temporary thing and would be replaced?—A. No.

Defendant introduced the testimony of three witnesses. Following is an outline of their testimony.

Defendant's first witness, Joseph D'Elia, stated that he has been an importer of pearls and beads since 1911. He testified that pearl beads, as they appear on the string representative of the imported strand (plaintiff's exhibit 1), are loosely strung and that his company has restrung merchandise which comes in with those loose ends after importation. Cross-examination developed that it has been the consistent practice of the witness, throughout his experience with imported pearls and beads, to restring all imported strands. He admitted that this general practice of his company may have been due to the inferior quality or type of string that was used. Under questioning by the court, the witness stated that the bulk of merchandise imported in the condition of the strands of pearl beads under consideration are used as necklaces and that the strands of beads in question, in the same graduation as they appeared at the time of importation (plaintiff's exhibit 2), are unfinished articles, "unfinished beads, beads loosely strung." He testified, further, that restringing the imported strands of pearl beads in the same graduation as they appeared at the time of importation (plaintiff's exhibit 2) and then adding a clasp would produce a finished article known as a necklace.

Defendant's second witness, Anthony Di Maria, has been an importer of beads for 30 years. He stated that pearl beads imported on a string with loose ends (exhibit 1, *supra*) are "loose end beads"

and that, by merely adding a clasp and finishing it off, the article would be a complete necklace. Redirect examination brought out the witness' knowledge of a trade practice, in which strings of graduated beads of the length of the imported merchandise (exhibit 1, *supra*) were reduced to a mass of loose beads from which "earrings, pins, brooches, different items" were made. Under questioning by the court, the witness admitted that the use of a string, such as plaintiff's exhibit 1, except for a necklace, would be an incidental or an occasional use. His testimony on the point is as follows (R. 70):

JUDGE MOLLISON: If you were going to make necklaces or brooches or other articles, you wouldn't buy beads such as or similar to Illustrative Exhibit 1, would you? You would get some other type of beads to use in those articles?

THE WITNESS: You usually would, yes.

JUDGE WILSON: It would be a rare use when you used a string similar to Illustrative Exhibit 1, except for a necklace, isn't it?

THE WITNESS: Well, it has been done.

JUDGE WILSON: It would be rare?

THE WITNESS: Yes, Your Honor.

CHIEF JUDGE OLIVER: As a matter of fact, in the condition in which imported, save for the possible restringing, putting on the clasp, it is a necklace in essence, isn't it?

THE WITNESS: You are right, Your Honor.

Defendant's third witness, Victor Ferrante, has been an importer of pearl beads since 1932, including pearl beads on loose strings (exhibit 1, *supra*). He stated that the purpose of stringing beads on strings with loose ends extending beyond the length of the strands of beads was for handling in transportation and that he has sold such strings of beads to manufacturers and also used them for restringing into necklaces or for making other articles, such as earrings and bracelets. The great bulk of them was used for necklaces. On cross-examination, the witness testified that imitation solid pearl beads imported on a good, strong string, graduated and properly matched in color, and which required only the addition of a clasp, would be unfinished, and that when a clasp had been added, it would be a finished necklace (plaintiff's exhibit 3). He stated further that his understanding of the term "loosely strung" includes all strings of beads, without a clasp, and that he does not consider beads permanently strung where it is physically possible to remove beads from the string. He concluded his testimony with the admissions that he had never handled imitation solid pearl beads from Spain and that he had not seen "specifically Spanish beads."

The evidence before us, as hereinabove outlined, is sufficient to show that the strands or strings of imitation solid pearl beads from Spain that are involved herein were ordered by plaintiff and imported in certain specified lengths, which are standard necklace lengths; that

the beads, as imported, were graduated and on substantial strings, which were longer than the beads strung thereon to facilitate the addition of a clasp; that none of these imported strands of beads (approximately 900,000 in number) was restrung after importation; and that all of them were ultimately finished, by the addition of a clasp, into necklaces. The imported strings of pearl beads were, at the time of importation, unfinished necklaces, so far processed and advanced in condition as to require only the addition of a clasp to make them completely finished necklaces.

Under such a set of facts, there is ample judicial authority to support plaintiff's claim for classification of the merchandise as unfinished jewelry under paragraph 1527 (a) (2), *supra*. In *United States* v. *May Department Stores Co.*, 15 Ct. Cust. Appls. 46, T. D. 42151, the Court of Customs Appeals held to be properly classifiable as jewelry certain rose-colored glass beads, cut, faceted, perforated, and carefully graduated on a substantial string, which was knotted between each bead, the entire necklace being 31 inches in length and not capable of being unfastened or opened.

The case of *United States* v. *Murphy & Co.*, 15 Ct. Cust. Appls. 266, T. D. 42464, involved necklaces of imitation pearl beads. The necklaces were of two lengths; one about 12, and the other about 60, inches in length. They were composed entirely of imitation pearl beads that were strung on cheap, but substantial, strings, without metal clasps, and were intended to be fastened about the neck of the wearer by tying the projecting ends of the string upon which the beads were strung. The court held the merchandise to be properly classifiable as jewelry, as classified, and not as beads, as claimed, stating that the issue was controlled by the *May Department Stores* case, *supra*.

Both of the above-mentioned cases were cited with approval in *Hecht Pearl Co. (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 171, T. D. 44375, which involved certain imitation pearl beads, strung and arranged to form necklaces and bracelets, finished and unfinished, without clasps. In affirming the decision of this court (*Hecht Pearl Co. (Inc.)* v. *United States*, 57 Treas. Dec. 491, T. D. 43939), our appellate court quoted with approval therefrom the following:

It seems to us this merchandise is something more than imitation pearl beads, strung. *In its imported condition* it has been sufficiently manufactured to pass beyond the stage of materials and to become articles; whether those articles be finished or unfinished is immaterial. *As imported* it has been dedicated to one particular use, viz, in the case of all the articles, except Exhibit 4, for use as necklaces, and as to Exhibit 4 for use as a bracelet. What the plaintiff may choose to do with these articles after importation does not matter. It is the imported condition of the merchandise which is the criterion. * * * [Italics theirs.]

In holding the merchandise to be properly classifiable under the provision for "Jewelry, * * * finished or unfinished," in paragraph 1428 of the Tariff Act of 1922 (predecessor to paragraph 1527 (a) (2), *supra*), the Court of Customs and Patent Appeals stated as follows:

> In the *May, Field & Co.*, and *Murphy & Co.* cases, *supra*, the merchandise held to be "articles" and properly classifiable as jewelry was, it seems, looked upon as being in a finished state. In the instant case (except as to Exhibit 3) it was found that the merchandise is "unfinished jewelry." The issue, therefore, seems to be reduced to the question, May a distinction be made solely on the ground that one is finished and the other unfinished?
>
> We do not think so.
>
> The paragraph (1428) reads "* * * finished or unfinished * * *."
>
> If the unfinished product has become an article, therefore, it is necessarily an article of unfinished jewelry and so provided for quite as specifically as is the finished article of jewelry. To hold otherwise would be illogical and inconsistent with sound reasoning.

The reasoning followed in the foregoing quotation can be applied with the same force and effect in this case. Here, the preponderance in weight of the evidence shows that the strings of solid imitation pearl beads under consideration were, in their imported condition, so far advanced beyond the stage of mere beads as to be dedicated to, and commercially fit only for use as, necklaces, and were actually so used. Under the authorities, hereinabove referred to, the merchandise in question is unfinished jewelry and properly classifiable as such, as claimed.

The issue before us does not present a question of relative specificity, as suggested in defendant's brief. The strands of beads under consideration, as imported, were on substantial strings, graduated from the smallest on top to the largest in the center, and in standard necklace lengths. In its condition, as imported, the merchandise in question was identified as necklaces.

The case of *Lorsch & Co.* v. *United States*, 8 Ct. Cust. Appls. 246, T. D. 37521, discussed in detail in defendant's briefs, is clearly distinguishable. There, the merchandise consisted of imitation pearl beads that were strung temporarily upon flimsy cotton strings for facility in transportation only, and that had to be restrung more durably before being practical for use as chains or necklaces. In this case, the strands of solid imitation pearl beads under consideration required no restringing after importation. On the contrary, they were, in their imported condition, sufficiently advanced beyond the stage of mere beads to become dedicated for use as necklaces.

Careful consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Our specific references herein have been only to such cases deemed helpful to our disposition of the issue.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the strings of solid imitation pearl beads in question to be properly classifiable under the provision for "Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof) * * *," in paragraph 1527 (a) (2) of the Tariff Act of 1930 and dutiable thereunder at rates equivalent to 110 per centum ad valorem, as claimed by plaintiff.

The protests are sustained and judgment will be rendered accordingly.