BEFORE THE FIRST DIVISION, SEPTEMBER 16, 1963

**No. 67981.**—Fred Frankel & Sons *v.* United States, protest 59/30673 (New York).

OLIVER, Chief Judge: Plaintiff, an importer of beads, trimmings, and imitation precious and semiprecious stones, imported certain strings of beads, which

were assessed with duty at the rate of 55 per centum ad valorem under the provision in paragraph 1527(a)(2) of the Tariff Act of 1930, as modified by T.D. 51802, for jewelry, commonly or commercially so known, finished or unfinished (including parts thereof), and valued above 20 cents per dozen pieces. It is claimed that the merchandise is dutiable at only 15½ per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as modified by T.D. 54108, as beads, not specially provided for.

The record herein consists of the oral testimony of two witnesses and samples of the present merchandise, in its condition as imported and as it appears in different phases of manipulation after importation. All of the evidence was introduced by plaintiff. Defendant offered nothing in contradiction thereof. Following is a summary of the record.

The strings of beads under consideration are imported in clusters or bunches, with approximately 10 strings of beads in each bunch (plaintiff's exhibit 1). The beads are uniform in color and are graduated in size on strong rayon strings that are about 60 inches longer than the required length of 15, 16, 17, or 21 inches utilized by the beads. The extra length of the rayon string extends about 30 inches on each side of the beads, as they are strung. Counsel for the respective parties stipulated that the beads in controversy are "in imitation of alabaster, which is not a precious or semiprecious stone," and that "they are not in part of synthetic resin." (R. 4.)

Based on personal observation of the process of manufacture in the country of exportation, the president of the plaintiff corporation described the process as follows (R. 13–14):

The beads are manufactured by melting little globs of glass from a rod of alabaster glass. The glob of glass is dropped onto a wire, which is twirled, forming a round bead around the wire. The beads are then pulled off the wire, sized, and strung according to specifications.

In their condition as imported, the strings of beads under consideration are not merchantable commodities. Instead, they serve as "a base bead core for ultimate pearlizing and processing to make a jewelry product." (R. 32.) As stated by plaintiff's president, "Alabaster beads are only brought in for pearlizing purposes," (R. 14) and, for such purposes, plaintiff always has sold the imported strings of alabaster beads to a jewelry or pearlizing firm. Strong strings are desirable to facilitate handling and to prevent loss of beads in the pearlizing thereof after importation.

Pearlizing consists of a series of processes whereby a pearl coating is applied to the alabaster beads. The individual hanks, or strands, of beads are separated from the cluster, as imported, and "each individual strand is divided approximately in half so that both halves are stripped downwards towards both ends of this long string." (R. 34.) The middle part of the thread, remaining after the beads have been stripped to the ends thereof, is hooked to the dipping board or rack (plaintiff's exhibit 3), so that it remains clean throughout the pearlizing of the beads. The strings of beads, being the ends of the elongated rayon string, are placed on a dipping rack (plaintiff's exhibit 3), where they are spaced to prevent touching each other, and then immersed in a "cement solution," which is a fast-drying adhesive coating that seals the beads in their spaced positions (plaintiff's collective exhibit 2–D). After the cement coating has dried, the strings of beads are dipped into synthetic pearl solutions. The number of dips and the variety of chemicals used in the solutions determine the final effect in the coated beads. A manufacturer of costume jewelry and imitation pearls, who purchased the present merchandise from plaintiff and who pearlized the imported strings of beads, described the processing as follows (R. 37):

* * * After they are spaced and cemented, the cement coating has to dry. Once dried, it then is dipped into pearl, synthetic pearl solutions. The number of dips, the variety of chemicals that go into these solutions determine the final effect of the final pearl to be sold, so that in this particular case, and I have purposely selected one of the products which is the most popular priced, the lowest price in our line, to represent it as a very low commercial selling price for this particular type of item, so in this case we have gone through three pearl coats following the cement coat. [Plaintiff's collective exhibits 2–E, 2–F, and 2–G.]

Between each of the dippings, there are drying and rotating processes "to dry the solution so that the solvents evaporate," and then, too, "the component parts in the solutions themselves orientate to give us this light reflecting surface that we call a pearl." (R. 38.) Following the last dipping process, the pearlized strings of beads are brought to the dismounting room where the beads are stripped from the coated thread, breaking the cement binder on the string between each bead and then sliding the beads to the clean or uncoated string on which the pearlized, graduated beads are strung, and a metal tip or hook is added to permit attachment of a clasp. The coated thread is cut off and discarded. The strings of pearlized beads are held in inventory. Upon receipt of orders for single strand, or multiple strand, necklaces, the strands of pearlized beads are measured, knotted, and fitted with a fastening device, to complete the finished necklaces.

The record, as hereinabove outlined, shows a situation not unlike that which was before us in *W. J. Byrnes & Co. et al.* v. *United States*, 47 Cust. Ct. 323, Abstract 66102. There, as here, strings of beads were classified under the jewelry provision in paragraph 1527(a)(2), as modified, *supra*, and were claimed to be dutiable as beads under paragraph 1503, as modified, *supra*. In the cited case, plaintiffs' claim was sustained on a finding that the strings of beads, in their condition as imported, were incapable of any practical commercial use, and that to become available as commercial items, either as necklaces or bracelets, required that they be completely disassembled and restrung, then treated with glue for proper usage, and finally fitted with a clasp.

Substantially the same factual condition appears in this case. Here, plaintiff's uncontradicted evidence establishes that the strings of alabaster beads under consideration, in their imported condition, are nothing more than the "core," or the raw material, that is treated and subjected to a series of processes, producing pearlized beads. The beads, in their condition immediately following the pearlizing processes, are not fit for commercial usage. The string, that holds the beads while they are being processed, becomes useless and is always discarded. Hence, the beads must be restrung. That the processor utilizes a part—the clean portion—of the original rayon string, does not, in any way, lessen the importance of the restringing, as it is related to the issue in this case, as an essential operation in the manipulation of the imported merchandise into an article of jewelry, i.e., a necklace.

The strings of alabaster beads under consideration in this case, like the pearl beads that were involved in the *Byrnes* case, *supra*, are, *in their condition as imported*, strings of beads and, as such, properly classifiable under the provision in paragraph 1503, as modified, *supra*, for beads, not specially provided for.

Counsel for defendant, in their brief, cite *Hecht Pearl Co. (Inc.)* v. *United States*, 18 CCPA 171, T.D. 44375, and *D. Lisner & Co., Inc.* v. *United States*, 40 Cust. Ct. 104, C.D. 1967. Both of the cited cases are distinguishable from the present case, as the following analysis of each discloses.

In the *Hecht* case, which arose under the Tariff Act of 1922, the merchandise consisted of certain imitation pearl beads on strings, for use as necklaces and bracelets. Some were completely finished articles; others were only partly finished. In denying the importer's claim for classification as imitation pearl

beads and sustaining the collector's classification of the merchandise under the provision for jewelry, finished or unfinished, the court found from the record evidence that the merchandise was something more than imitation pearl beads, strung; that at least 50 per centum of it was sold in the exact condition as imported; and that some of it was restrung in the importer's own plant and some was sent out to other plants for restringing. The purpose of restringing, explained by a witness from the importing company, was quoted in the court's decision as follows:

The sole purpose is to add some necessary ornament, a crystal of some kind or an ornament of some kind to make the article complete; sometimes add a clasp or a bar of some kind which will complete the necklace.

The appellate court expressed its findings, in the cited case, as follows:

We are satisfied from the whole record in the case that the merchandise which is restrung or reworked is so treated by the importer, not because it must be in order to put it in condition for sale as an article (except, of course, any item that might be damaged) but as a matter of choice, and an election on the part of the importer to do something additional to an importation, after receiving it, does not affect its classifiable status. This status must be determined upon the basis of its condition as and when imported.

No comparable condition exists herein with respect to the present merchandise. On the contrary, plaintiff's undisputed testimony shows that these strings of alabaster beads, in their condition as imported, are not susceptible of any commercial use and that, after importation, they must be pearlized, not by way of "an election on the part of the importer to do something additional to an importation," the *Hecht* case, *supra*, but because the work is necessary to bring them to salable condition, as necklaces.

In the *Lisner* case, *supra*, the imported merchandise consisted of strings of imitation pearl beads in standard necklace lengths that required only the addition of a clasp, without restringing, to form a complete necklace. The same is not true concerning the present merchandise. These imported strings of alabaster beads are of such great length as to allow for pearlizing the beads after importation and then to permit the destruction of a portion of the string and the use of the remainder for the manufacture of the necklaces. In its imported condition, the merchandise in question has not been advanced beyond the mere state of strings of beads.

The case of *Lorsch & Co.* v. *United States*, 8 Ct. Cust. Appls. 246, T.D. 37521, is also mentioned in defendant's brief. In that case, the merchandise consisted of imitation pearl beads that were strung temporarily upon flimsy cotton strings for facility in transportation only and which had to be restrung more durably before being practical for use as chains or necklaces. The *Lorsch* case arose under the Tariff Act of 1913 and involved paragraph 333 thereof, which included a provision for imitation pearl beads "strung loosely on thread for facility in transportation only," under which the appellate court held the merchandise to be properly classifiable. Thus, in addition to the factual distinction between that case and the present one, an important differentiation between the two is the controlling statutory language in each.

Of material significance, in our disposition of the present issue, is the proviso embodied in paragraph 1503 of the Tariff Act of 1930, as originally enacted, which proviso was not included in predecessor paragraphs in earlier tariff acts. Said proviso reads as follows:

\* \* \* *Provided*, That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: \* \* \*.

The force and effect of the foregoing statutory provision, in giving congressional intent to paragraph 1503, as originally enacted and as modified, were discussed in our decision in *S. H. Kress & Co.* v. *United States,* 41 Cust. Ct. 173, C.D. 2037, affirmed in *United States* v. *S. H. Kress & Co.,* 46 CCPA 135, C.A.D. 716.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the strings of alabaster beads involved herein to be dutiable at the rate of 15½ per centum ad valorem under the provision in paragraph 1503, as modified, *supra,* for beads, not specially provided for, as claimed by plaintiff.

That claim in the protest is sustained, and judgment will be rendered accordingly.