(C.D. 4085)

FINN BROS., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 8, 1970)

*Walter E. Doherty, Jr.*, for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

Before WATSON, MALETZ, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: This case concerns the proper tariff classification and rate of duty for certain items described on the entry papers as "carved ivory rose flowers." However, there is a collateral issue which must be considered before proceeding to a decision on the merits.

The merchandise was entered for consumption on November 19, 1965 under TSUS item 740.35, and estimated duties, based on a 55 per centum ad valorem duty rate, were deposited. Although the case was tried (R. 3) and briefed by the parties on the assumption that the merchandise was classified as entered, it was, in fact, classified in liquidation under item 740.37, although liquidated at the 55 per centum rate.

The classification of the merchandise is shown on the Report of Collector [District Director] on Protest (Customs Form 4297) transmitting the entry and accompanying papers to the court. The Report describes the merchandise as "Carved Ivory," lists the TSUS classifying number as "740.37," and gives the tariff rate as "55%". Moreover, the Special Customs Invoice bears the red-ink notation "740.37 55%" (apparently placed thereon by the examining officer); and the protest itself asserts that the merchandise is not classifiable "under Item 740.37, TSUS, at 55% ad valorem as assessed."

At the time of entry, the pertinent provisions of the tariff schedules were as follows:

Schedule 7, Part 6, Subpart A:

Subpart A headnotes:

\*      \*      \*      \*      \*      \*      \*

2. For the purposes of this subpart—

(a) the term "jewelry and other objects of personal adornment" (items 740.05, 740.10, 740.30, 740.35, and 740.37) includes rings, ear-rings and clips, bracelets (including watch bracelets and identification bracelets), necklaces, \* \* \* pendants, \* \* \*.

\*      \*      \*      \*      \*      \*      \*

3. Items 740.30, 740.35 and 740.37 cover articles described in headnote 2(a) of this subpart, except buttons, buckles, and slides, and hair ornaments (see parts 7A and 8A of this schedule).

\*      \*      \*      \*      \*      \*      \*

Jewelry and other objects of personal adornment not provided for in the foregoing provisions of this part (except articles excluded by headnote 3 of this part), and parts thereof:

\*      \*      \*      \*      \*      \*      \*

| | | |
|---|---|---|
| 740.35 | Valued over 20 cents but not over $5 per dozen pieces or parts_____ | 55% ad val. |
| 740.37 | Valued over $5 per dozen pieces or parts___ | 35% ad val. |

However, under the Technical Amendments Act of 1965,[1] applicable, with certain exceptions, to articles entered, or withdrawn from warehouse, for consumption, on December 7, 1965, items 740.35 and 740.37 were stricken from the schedules and the following inserted in lieu thereof:

Valued over 20 cents per dozen pieces or parts:

| | | |
|---|---|---|
| 740.35 | Watch bracelets valued over $5 per dozen___ | 35% ad val. |
| 740.37 | Other _____ | 55% ad val. |

The merchandise was appraised as entered on November 2, 1966 (as indicated on the summary sheet) at a value of over 20 cents but not over $5 per dozen pieces (as per invoice); and the entry was liquidated on November 23, 1966.

It would appear, although this is only speculation, that the merchandise was classified under the belief that the Technical Amendments Act was applicable thereto. Be that as it may, classification of the subject merchandise under item 740.37 which, at the time of entry covered only jewelry and other articles of personal adornment valued over $5 per dozen pieces or parts (and took a duty rate of only 35 per centum ad valorem), was clearly erroneous. Consequently, no presumption of correctness attaches to the classification herein.

---

[1] Pub. L. 89–241, §§ 2(a), 71(a), 79 Stat. 947.

Plaintiff claims, alternatively, that the merchandise is classifiable under the tariff schedules, as follows:

Schedule 7, Part 13, Subpart C:

Articles, not specially provided for:

\*       \*       \*       \*       \*       \*       \*

792.60     Of ivory_____ 12% ad val.

Schedule 7, Part 6, Subpart B:

Subpart B headnotes:

1. For the purposes of the tariff schedules the term "imitation gemstones" means glass, plastics, or other materials made into shapes suitable for use in jewelry or for other ornamental purposes in a manner similar to natural gemstones, whether or not in imitation thereof, but does not include natural gemstones, synthetic gemstones, reconstructed natural gemstones, or imitation pearls.

\*       \*       \*       \*       \*       \*       \*

741.35   Imitation gemstones (except imitation gemstone beads)_____ 7% ad val.

Schedule 5, Part 1, Subpart H:

Subpart H headnotes:

1. The provisions of this subpart do not cover—

\*       \*       \*       \*       \*       \*       \*

(vi) jewelry and other articles provided for in part 6 of schedule 7.
2. For the purposes of the tariff schedules, the term "precious stones" means natural diamonds, emeralds, rubies, and sapphires.

\*       \*       \*       \*       \*       \*       \*

Precious and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry:

\*       \*       \*       \*       \*       \*       \*

520.39   Other _____ 5% ad val.

At the trial, the sole witness, president and treasurer of the plaintiff importer, which imports and sells stones to jewelry manufacturers in the major jewelry centers of the country (New York City, Philadelphia, Newark, and Providence), testified as to the use (which was in nowise controverted by defendant) of the articles at bar. Nothing is done to these pieces, which are carved in the shape of flowers with smooth flat backs (exhibit 1).[2] They are used solely, it appears from the testimony, to make jewelry such as earrings and pins, by setting

---

[2] Three of the four "carved ivory roses" (as they were described by the witness) comprising exhibit 1 have holes pierced partway through the bottom, or back.

them on the "peg" of an earring back or metal pin (collective exhibit 2) and securing them with epoxy, and to make pendants, necklaces and bracelets (exhibits 3, 4, and 5). Coral, opals, jade, and some precious gemstones are mounted on brooches or pins in a similar manner (exhibits 7, 8–A, and 9–A).

In the trade, diamonds, rubies, emeralds and sapphires are considered to be precious stones, and coral to be a semiprecious gemstone. Imitation gemstones, the witness stated, are stones "that would be manufactured to be used or look like a natural stone," and would be made from ivory, plastic, glass or wood.

Plaintiff stresses that the carved ivory roses are "fully finished articles in themselves" which "are not further processed after importation" (a point not disputed by defendant), and reasons from this that they are "neither parts of pins, brooches, pendants, earrings, or other articles of jewelry, nor * * * unfinished jewelry" (brief, page 7).

We think that, on the record and samples herein, established case law compels a different conclusion. It is settled that, if an item in its imported condition has been so far advanced beyond the stage of materials as to be dedicated to and commercially fit only for use as a particular article, it is properly classifiable, albeit in an unfinished condition, under the *eo nomine* designation for that article. *United States* v. *Borrelli & Vitelli*, 19 CCPA 291, T.D. 45467 (1932) ; *Hecht Pearl Co. (Inc.)* v. *United States*, 18 CCPA 171, T.D. 44375 (1930) ; *United States* v. *May Department Stores Co.*, 15 Ct. Cust. Appls. 46, T.D. 42151 (1927) ; *D. Lisner & Co., Inc.* v. *United States*, 40 Cust. Ct. 104, C.D. 1967 (1958).

This rule of construction with respect to unfinished articles, which had been developed under earlier tariff statutes, was subsequently incorporated in General Interpretative Rule 10(h) of the tariff schedules which provides that—

> unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether *finished or not finished;* [Emphasis supplied.]

In *United States* v. *Cohn & Rosenberger, Inc.*, 19 CCPA 137, T.D. 45259 (1931), certain articles of bone (some of them, according to the court, resembling ivory), carved into the shape of small roses with plain, smooth backs had been classified as unfinished jewelry under the provision of paragraph 1428, Tariff Act of 1922, for "Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed, valued above 20 cents per dozen pieces, * * *". Some of the bone roses went into pendants which were suspended on a necklace chain; others were used for earrings and brooches. After importation, the article was drilled with a hole into which the pin of a

brooch, or a hook or suitable holder for an earring or pendant, was fitted.

The trial court had found that the bone roses were *"complete parts of jewelry* which are combined with other parts to make complete articles of jewelry"[3] [emphasis copied], and held that, as parts of jewelry were not specially provided for in that act, the merchandise was dutiable as manufactures of bone.

The appellate court reversed the trial court and affirmed the classification, stating (page 139 *et seq.*) :

> It is sometimes difficult to determine when an article is unfinished jewelry, a part of jewelry, or material suitable for the making of jewelry, and it is more difficult to lay down a hard and fast rule for the guidance of customs officials in classifying articles where a consideration of this question is involved. Some articles are parts of jewelry and, at the same time, unfinished jewelry.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> We can readily conceive, however, of parts of jewelry that could hardly be said to be unfinished jewelry. A very small and inconsequential though completely finished part of a definite article of jewelry might not be regarded, for tariff purposes, as the unfinished jewelry. The sill of a house is not an unfinished house, though it is part of the house.
>
> In the case at bar the carved bone rose is a complete article, ready to wear, except for some means of attaching the same to the person or clothing of the wearer. It is finished with that exception, and the statute made specific reference to "jewelry \* \* \* finished or unfinished." A brooch, an earring or a pendant of the material at bar, finished, would clearly be jewelry. *United States* v. *Doragon Co.*, 13 Ct. Cust. Appls. 182, T.D. 41051;[4] *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, T.D. 41052; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T.D. 42219.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> In the case at bar it is conceded that the bone articles are not so manufactured as to be dedicated to the making of one particular article of jewelry such as an earring alone, but that they are so far manufactured as to be dedicated to the making of earrings, brooches, and pendants, all three of which finished articles are conceded to be jewelry.
>
> In *Konishi Kotakudo Co.* (*Inc.*) v. *United States*, 17 C.C.P.A. (Customs) 355, T.D. 43798, this court, in speaking of the doctrine of exclusive use in determining when one thing was the manufacture of another, said: "This exclusive use is not necessarily confined to any one article, but may cover 'a particular kind or class of articles,' " and cited *A. H. Ringk* v. *United States*, 16 Ct. Cust. Appls. 132, T.D. 42769. If the language used in that case is

---

[3] *Cohn & Rosenberger* (*Inc.*) v. *United States*, 58 Treas. Dec. 813, 815, T.D. 44446 (1930).
[4] In *Doragon*, bone and ivory articles, including items described as "ivory pendants with pierced hole and ivory roses," were held properly classified as jewelry under paragraph 1428.

applied to the case at bar, it would seem proper to hold that earrings, brooches, and pendants belong to "a particular kind or class" of jewelry articles.

While holding the imported merchandise to be unfinished jewelry, upon this record, is going a step further than is affirmatively held in any case cited, we believe that the unfinished-jewelry provision in paragraph 1428 is sufficiently broad to apply to the importation at bar. It would seem to result in an anomalous conclusion to hold that the bone rose at bar would be unfinished jewelry, if, when finished, it was worn as a brooch only, and refuse to hold the same to be unfinished jewelry because of the fact that, when finished, it was finished into and worn as a brooch, or a pendant, or an earring. Indeed, it is within the common knowledge that some brooches, with pins, are worn as pendants. The statute does not say "unfinished brooches," or "unfinished earrings" or "unfinished pendants." It provides for "unfinished jewelry" and, we think, aptly describes the merchandise at bar.

In *United States* v. *Borrelli & Vitelli*, 19 CCPA 291, T.D. 45467 (1932), silver filigree pendants, completed to the extent that it was only necessary to provide some kind of fastener for the purpose of attaching them to a necklace or to the ear so that they could be worn, when the attachments were made, as pendants or earrings, were held, on the authority of *Cohn & Rosenberger (Inc.)*, *supra*, to be unfinished jewelry under paragraph 1428.

Thus, the fact that an article, in its imported condition, might be dedicated to different types of jewelry, such as earrings, brooches, or pendants, depending upon the type of fastener used, would not preclude it from classification as unfinished jewelry. In this sense, the *Cohn & Rosenberger*, and *Borrelli & Vitelli* cases expressly broadened the scope of the "jewelry, * * * unfinished" provision which, as enunciated in *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T.D. 42493 (1927), had been limited to articles which were definitely committed to the manufacture of a *particular kind* of jewelry.[5]

Subsequently, in two cases arising under the Tariff Act of 1930, ivory chains requiring only the addition of clasps and pendants to

---

[5] It will be noted that *United States* v. *Fred Frankel & Sons*, 52 CCPA 81, C.A.D. 862 (1965), and *Kurtz Importing Co.* v. *United States*, 56 CCPA 59, C.A.D. 954 (1969), are in a different posture. In *Frankel*, strands of imitation alabaster beads ordered graduated in size and in selected lengths to be made into necklaces, which were unsalable in their imported condition, but subsequently pearlized, provided with tips and clasps after the end portion of the beads was removed, and then sold as necklaces, were held to be unfinished necklaces, as their "ultimate destiny" as necklaces was clear, and, therefore, classifiable as unfinished jewelry under paragraph 1527 (a) (2), Tariff Act of 1930.

Similarly, in *Kurtz*, imitation alabaster beads, ordered in graduated sizes and in specific lengths, which after importation were stripped, pearlized and then restrung on new cords in the same graduated order, but with the end beads removed, and which were committed to the ultimate making of necklaces, were also held to be unfinished jewelry under paragraph 1527, within the rationale of the *Frankel* decision. Thus, the items in these cases differ from the articles at bar and the ones in *Cohn & Rosenberger* which were complete in themselves and required no additional work.

complete and make them into necklaces were held properly classifiable under paragraph 1527 as unfinished jewelry or parts of jewelry, *Morris, Mann & Reilly, Inc.* v. *United States,* 60 Treas. Dec. 1420, Abstract 18093 (1931); and pieces of ivory "carved in the semblance of flowers" were held classifiable as unfinished jewelry under that same provision, the court citing the *Cohn & Rosenberger* case, *Geo. S. Bush & Co., Inc.* v. *United States,* 63 Treas. Dec. 1172, Abstract 22543 (1932).

The carved ivory roses herein, which are completely finished and ready to wear, except for attachment of an appropriate fastener such as an earring back, hook, or pin, for use as an earring, brooch or pendant, as illustrated in exhibits 3, 4, and 5, are clearly unfinished jewelry. *United States* v. *Cohn & Rosenberger (Inc.), supra.* The fact that they may also be assembled into, or joined as, parts of bracelets or necklaces (see exhibits 3 and 5) does not militate against their classification as jewelry, unfinished.

We find, therefore, that the merchandise at bar comes within the scope of item 740.35 which, at the time of entry, covered jewelry and parts thereof, valued over 20 cents but not over $5 per dozen pieces or parts.

As item 740.35 is an *eo nomine* designation, it is more specific than the "basket" provision of item 792.60 for "Articles, not specially provided for: * * * Of ivory".[6]

In light of our finding that the articles are unfinished jewelry, we do not reach the question whether carved ivory is a semiprecious stone within the meaning of item 520.39. Schedule 5, Part 1, Subpart H, headnote 1(vi) specifically excludes from classification thereunder "jewelry and other articles provided for in part 6 of schedule 7."

Defendant argues, in response to plaintiff's alternative claim under item 741.35, that ivory is not used in a manner similar to natural gemstones and is not "'imitation gemstone' material" within the meaning of Schedule 7, Part 6, Subpart B headnote 1, *supra.* We need not consider this question; the carved roses herein, which are completely finished and dedicated to use as jewelry, are more advanced than mere "materials made into shapes suitable for use in jewelry". As we read this headnote, it applies to materials suitable for use in, but not sufficiently advanced to the state or condition of, jewelry. See *United States* v. *Borrelli & Vitelli, supra; Hecht Pearl Co. (Inc.)* v.

---

[6] Even if the ivory roses were considered to be "parts" of jewelry, item 741.35 would be more specific. General Interpretative Rule 10(ij), which provides that a "provision for parts of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part" is not applicable with respect to item 792.60: a provision for parts is more specific than a provision for "articles, not specially provided for." *J. E. Bernard & Co., Inc.* v. *United States,* 62 Cust. Ct. 536, 299 F. Supp. 1129, C.D. 3822 (1969). Moreover, chief use of the merchandise as "parts" of jewelry rather than as "unfinished" jewelry has not been shown. *J. E. Bernard & Co., Inc.* v. *United States,* 59 Cust. Ct. 31, C.D. 3060 (1967).

*United States, supra; D. Lisner & Co., Inc.* v. *United States, supra.* Thus, item 741.35 does not include unfinished jewelry, but certain specified materials out of which jewelry could be made.[7]

We conclude, for the foregoing reasons, that the carved ivory roses herein are properly classifiable, by virtue of General Interpretative Rule 10(h), under item 740.35 which, at the time of entry, provided for jewelry and other objects of personal adornment valued over 20 cents but not over $5 per dozen pieces or parts, at the rate of 55 per centum ad valorem. The protest is overruled.

Judgment will be entered accordingly.

(C.D. 4086)

---

[7] In *Long Sang Ti Chinese Curio Co.* v. *United States*, 47 Treas. Dec. 443, T.D. 40824–G.A. 8973 (1925), the Board of General Appraisers held that unfinished carved charms or pendants composed of jade, agate or rock crystal, cut into artistic forms, but not set, were dutiable as claimed, under paragraph 1429, Tariff Act of 1922, as semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, rather than as articles wholly or in chief value of agate, rock crystal, or other semiprecious stone under paragraph 233, as classified. The Board observed that "Possibly this merchandise is unfinished jewelry, and thereby would fall under paragraph 1428." However, as the issue of whether the articles are unfinished jewelry was not raised, it did not pass on that question.