(C.D. 4647)

FINN BROS., INC.
BREHM IMPORTING Co. *v.* UNITED STATES
C. ROSENBACH Co.

Court Nos. 70/64009, etc.
Court Nos. 70/9485, etc.
Court Nos. 70/24316, etc.

(Decided April 26, 1976)

*Doherty and Melahn (Walter E. Doherty, Jr.,* of counsel) for the plaintiffs.
*Rex E. Lee,* Assistant Attorney General (*Andrew P. Vance,* Chief, Customs Section, *Max Schutzman* and *Edmund F. Schmidt,* trial attorneys), for the defendant.

WATSON, Judge: In these jointly tried actions plaintiffs oppose the classification of their imported carved ivory flowers as jewelry or parts thereof [1] and seek classification of them as semiprecious stones.[2] Plaintiffs argue that these importations fall within the common meaning, or alternatively, the commercial meaning, of the term semiprecious stones. The record in *Finn Bros., Inc. v. United States,* 59 CCPA 72, C.A.D. 1042, 454 F. 2d 1404 (1972), *aff'g* 65 Cust. Ct. 252, C.D. 4085 (1970), was incorporated herein.

---

[1] Item 740.38 of the Tariff Schedules of the United States, as modified by T.D. 68-9, with duty at the rate of 49%, 44% or 38% ad valorem, depending on the date of entry.

[2] Item 520.39 of the Tariff Schedules of the United States, as modified by T.D. 68-9, with duty at the rate of 4% or 3% ad valorem, depending on the date of entry.

As a preliminary matter, I am of the opinion plaintiffs have successfully proved the importations are parts of jewelry rather than unfinished jewelry; the distinction being that as imported they are but one component of the contemplated article of jewelry and lack the essential metal findings such as rings, pins or pendants with which they must be combined in order to function as, or be considered and sold as, jewelry. See *Authentic Furniture Products, Inc.* v. *United States*, 61 CCPA 5, C.A.D. 1109 (1973), *aff'g* 68 Cust. Ct. 204, C.D. 4362, 343 F. Supp. 1372 (1972). See also, *Montgomery Ward & Co.* v. *United States*, 61 CCPA 101, C.A.D. 1131, 499 F. 2d 1283 (1974). I understand the term unfinished jewelry to mean jewelry articles possessing their essential parts but lacking some other measure of finality in their manufacture.

This finding has the effect of allowing plaintiffs to argue that the importations are parts of jewelry only in the sense that acknowledged semiprecious stones are parts of jewelry and therefore the tariff schedules headnote,[3] which excludes jewelry and other articles provided for in part 6 of schedule 7 from the subpart in which semiprecious stones are set out, has no exclusionary effect on these importations.

While I see no logical inconsistency or statutory obstacle to a claim that these importations are parts of jewelry in a certain sense but are more specifically provided for as semiprecious stones, I have not been persuaded that they are indeed semiprecious stones.

The proposition that the common meaning of semiprecious stones encompasses ivory articles, even those which are used in jewelry in a manner similar to acknowledged semiprecious stones, was not proved in this case nor did I see any indication that it could be proved. A common meaning which would exclude ivory is so much more plausible and verifiable that I see no merit in this aspect of plaintiffs' claim.

On the question of whether the tariff term "semiprecious stones" has a commercial meaning, that is to say, a well understood meaning of the trade which differs from its common meaning and which Congress can be assumed to have known, there was a divergence of opinion between the witnesses. I was not persuaded by plaintiffs' witnesses that a commercial meaning exists for the term in question.

The best proof of commercial meaning is not proof of the logic of the asserted trade usage but proof of the fact that it predominates.[4] In this case plaintiffs' proof was directed more to rationalizing the con-

---

[3] Headnote 1(vi) of schedule 5, part 1, subpart H.

[4] For example, there was no particular logical reason for the commercial designation of imitation oriental rugs being applied to rugs which imitated none of the characteristics of oriental rugs or for the limitation of the term "palm oil" to the oil of one variety of palm tree. *Stephen Rug Mills* v. *United States*, 32 CCPA 110, C.A.D. 293 (1944); *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422 (1949).

sideration of these ivory articles as semiprecious stones than to supporting the essential proposition that they were in fact *known* as semiprecious stones in the trade.

The testimony does establish that ivory is an organic substance comprising the teeth or tusks of certain animals and contains a large percentage of a mineral known as apatite. It has a value which would permit it to be called semiprecious in the sense that it falls between the extremes of value by which substances are categorized. It is an article of commerce in the jewelry trade and may be used in jewelry in the same manner as precious or semiprecious stones. It is treated in texts which have as their primary subject precious and semiprecious stones. All this may be granted. But the ultimate proposition, that ivory in the imported form or otherwise, is known in the trade as semiprecious stones, does not flow from the preceding facts nor was it established to my satisfaction by the opinion testimony of plaintiffs' witnesses, particularly in the face of strong testimony to the contrary from defendant's witnesses. I found no reason to give greater weight or credence to the testimony of plaintiffs' witnesses. In fact, I was left with the impression that their view of ivory articles as semiprecious stones was strained and expressed in a more tentative, oblique and technical manner than would be the case if it were simply the prevailing usage in the trade.

It has often been said that commercial meaning is rarely established in customs litigation. This is probably true, not because it requires a more demanding degree of proof but because the situations are relatively rare in which a tariff term has such a widespread "uncommon" meaning in a trade that Congress can be presumed to have used it that way as well.

In sum, I have not been persuaded that these importations are known in the jewelry trade as semiprecious stones. Consequently the classification under the provision for jewelry must be sustained. Judgment will enter accordingly.